# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JESHUA HAYES,

        Defendant.

No. 24-03025-01-CR-S-MDH

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Jeffrey P. Ray, Acting United States Attorney, and Stephanie L. Wan, Assistant United States Attorney, and the defendant, Jeshua Hayes ("the defendant"), represented by Paul Duchscherer.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the indictment, charging him with a violation of 18 U.S.C. § 2251(a), that is, sexual exploitation of children. The defendant agrees to and hereby does plead guilty to Count 2 of the indictment, charging him with a violation of 18 U.S.C. § 2422(b), that is, coercion and enticement.

The defendant agrees to and hereby does plead guilty to Count 5 of the indictment, charging him with a violation of 18 U.S.C. §2252(a)(2), that is, receipt and distribution of child pornography. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses, and is, in fact, guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

On September 18, 2023, a Lebanon, Missouri, Police Department ("LPD") officer took a report from Minor Victim 1's ("MV1") parents. At that time, MV1 was 16 years old and was living in Laclede County, within the Western District of Missouri.

According to MV1's mother, she was going through MV1's journal, and saw a note that MV1 was having sex with a "friend" at a park, later identified as Boswell Park, in Laclede County, Western District of Missouri. MV1's mother asked MV1 about the note, and MV1 told her mother that the "friend" was a 25-year-old male named "Jeshua." MV1 said she did not know "Jeshua's" last name, but that he lived 35 miles away from Lebanon. MV1 provided "Jeshua's" phone number. MV1 also told her mother that she met "Jeshua" on Omegle, and then ended up exchanging phone numbers and staying in contact.

MV1 disclosed that she and HAYES met at the Eagle Stop twice, once at the river access of YY Highway, and a third time at Boswell Park. She stated that during those meetings, they engaged in oral sex, sexual intercourse, and HAYES put his fingers in her vagina. MV1 discussed a specific incident where she met HAYES at Boswell Park, and they had sex on the floor of the family restroom.

Using police resources, LPD determined that phone number provided by MV1 for "Jeshua" belonged to Jeshua HAYES, of Tunas, Missouri.

On October 2, 2023, the case involving MV1 was assigned to a LPD detective. Using police resources, she determined that HAYES was in the Caldwell County, Missouri, Detention Center in relation to an unrelated investigation conducted by the Caldwell County, Missouri, Sheriff's Department ("CCSD").

On October 4, 2023, a CCSD detective obtained a state search warrant to search HAYES's cellular phone that was seized during his arrest. The forensic analysis was completed by the St. Joseph, Missouri, Police Department Electronic Crimes Unit.

On October 11, 2023, MV1 underwent a forensic interview at Kids' Harbor in Osage Beach, Missouri. When asked why she came to Kids' Harbor, MV1 stated she was having sex with a 25-year-old named "Jeshua." During the interview, MV1 disclosed that she met HAYES on the social

networking website Omegle, that they used Omegle and the calling and messaging app, TextNow, to communicate and discuss sex. MV1 and HAYES communicated via TextNow regarding meeting up for sexual activity, to include where and when they would meet. Finally, MV1 stated that she and HAYES met and engaged in sexual intercourse on two separate occasions at the nearby park in Lebanon, Laclede County, Missouri. According to MV1, during their conversations on Omegle, MV1 told HAYES that she was a minor, and HAYES stated that was "fine by [him]."

Both the CCSD and the LPD investigations were assigned to a Federal Bureau of Investigation (FBI) Task Force Officer (TFO) for possible federal prosecution. The TFO obtained a separate federal search warrant (23-SW-2171-DPR) to review the data from HAYES's phone, in reference to the investigation involving MV1.

Included in HAYES's phone data were parts of the chats between HAYES and MV1. That partial chat log included the following:

i. The context indicated they already know each other (presumably from the Omegle conversations), and are discussing a meet up at an apartment or park.
ii. HAYES's told MV1 to delete her messages.
iii. HAYES said, "I want you to know that if you get pregnant I'll accept responsibility and accept consequences." MV1 replied, "don't worry you didn't cum in me."
iv. HAYES said, "Dude you could turn me in in the the future... Cause I mean I'm 25 and.... I shouldn't have walked away without trouble.... I'm just saying I was worried you'd turn me in."
v. On September 2, 2023, MV1 said, "Hey sorry.. I was Grounded... but I can't go outside till I get my brith control shot and some condoms." HAYES replied, "Wait She knows?"
vi. HAYES said, "Still I'm 25 so technically I'm a pedo... your 16, I'm 25 ntm the law states you have to be at least 17 years of age to give consent as an adult so yes I'm technically a pedo." They continued to talk about how they want to have sex again and HAYES goes on to say, "I wish we could fuck... I'm going to see what I have to do tomorrow, maybe I'll come over and we can fuck."
vii. On September 3, 2023, while discussing where to meet up for sex, HAYES said, "I told you if people near get suspicious they could contact law enforcement."
viii. On September 3, 2023, MV1 said her mother called the Police so they can't meet for sex.
ix. They continued to discuss places and times to meet for sex. On September 12, 2023, they discussed meeting as Boswell Park in Lebanon. HAYES said, "I want to take you to the bathrooms and fuck your ass."
x. On September 13, 2023, HAYES said, "... I ahd a thing for really young... girls and ... I'm trying to stop." He then describes his preferred ages as, "9-22... I know better than to duck a 10yr but I'm curious still."
xi. On September 14, 2023, the context of their conversations indicated they were meeting up that day at the park. MV1 said her "hickey" disappeared, and HAYES said, "I felt your orgasm... I went ahead and fucked you harder than ever."

xii. On September 17, they discussed plans to meet at the park for sex again.

xiii. Later on September 17, 2023, HAYES told MV1 that another girl was interested in him and told MV1, "that means no more nudes, I would just be your friend." They started arguing over their breakup, and the conversation ends soon after.

xiv. Both MV1 and HAYES sent images during these conversations, though they were no longer attached to the chat log. The context of many of these photos indicated they were sexual photos. They discussed masturbating to each other's images.

On December 4, 2023, the TFO completed a second review of the data from HAYES's phone to look at all the data, not just the chat messages, to determine if there was any child pornography or any other victims.

The TFO found multiple search terms relevant to the investigation, including:

i. Various taboo anime porn including minor-aged characters.

ii. Numerous "loli" searches.

iii. Adult pornography searches, to include teen models.

iv. "How far is... ?" searches for Linn, Lee's Summit, Marshfield, Ava, Harrisonville, Fordland and many other cities.

v. Homemade teen gay boys

vi. Omegle

vii. Motels in Buffalo, MO

viii. How many years does it take to be a pediatrician

ix. What is statutory sodomy

Within Google Translate, the TFO found the following phrases:

i. "Trade cp collections?"

ii. "Yeah, means above the age of 8-14 years old. Like I said im into younger not older"

TFO Walker also found additional chats between HAYES and MV1. MV1 used additional TextNow phone numbers. These chats contained sexually explicit images of MV1 that, based on TFO Walker's training and experience, were child pornography.

In addition to the photos and videos of MV1, TFO Walker found 46 additional images of child pornography, and 360 videos depicting child pornography. TFO Walker recognized these files, from his training and experience, as images and videos commonly downloaded from the internet, and not produced by HAYES.

TextNow and Omegle both use the internet to function.

HAYES agrees that he employed, used, persuaded, induced, enticed, and coerced MV1, a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and that he knew or had reason to know that such visual depiction would be transported

across state lines or in foreign commerce or the visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

HAYES also agrees that he knowingly used a computer and/or the cellular telephone network to attempt to persuade, induce, and entice an individual under the age of eighteen years of age to engage in sexual intercourse, and that based on the sexual activity that occurred, the defendant could have been charged with a criminal offense under the laws of the State of Missouri.

Further, HAYES agrees that the materials containing the child pornography or CSAM (that were received by HAYES) were produced using materials that had been mailed, shipped, and transported in interstate or foreign commerce and/or the materials containing the child pornography or CSAM (that were received by HAYES) had been mailed, shipped, and transported by computer in interstate or foreign commerce.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon his plea of guilty to Count 1 of the indictment, charging him with sexual exploitation of children, the minimum penalty the Court may impose is not less than 15 years' imprisonment, while the maximum penalty the Court may impose is not more than 30 years' imprisonment, not less than 5 years', or life, supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special

assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

The defendant understands that, upon his plea of guilty to Count 2 of the indictment, charging him with coercion and enticement, the minimum penalty the Court may impose is not less than 10 years' imprisonment, while the maximum penalty the Court may impose is not more than life imprisonment, not less than 5 years', or life supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

The defendant understands that, upon his plea of guilty to Count 5 of the indictment, charging him with receipt and distribution of child pornography, the minimum penalty the Court may impose is not less than 5 years' imprisonment, while the maximum penalty the Court may impose is not more than 20 years' imprisonment, not less than 5 years' supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6.      **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

  a.      in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

  b.      the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c.     in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not less than 5 years, or life, on Counts 1, 2, and 5;

d.     if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to 3 years without credit for time previously spent on supervised release for Count 1, 5 years without credit for time previously spent on supervised release for Count 2, and 2 years without credit for time previously spent on supervised release for Count 5; however, as to all Counts, if the Court revokes the supervised release because the defendant committed a criminal offense under chapter 109A, 110 (child pornography offenses), or 117, or section 1201 or 1591 of Title 18 of the United States Code, the law may allow the Court to impose a period of imprisonment of five (5) years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot be less than 5 years', or life, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e.     the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.     any sentence of imprisonment imposed by the Court will not allow for parole;

g.     the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h.     the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7.     **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to sexual exploitation of children, coercion and enticement, and receipt and distribution of child pornography for which it has venue, and which arose out of the defendant's conduct described above in Paragraph 3. Additionally, the United States Attorney for the Western

District of Missouri agrees to dismiss Count 3, sexual exploitation of children, and Count 4, transfer of obscene matter to a minor, at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

8.     **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any

recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts his pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

b. The applicable Guidelines section for Count 1 is U.S.S.G. § 2G2.1, the applicable Guidelines for Count 2 is U.S.S.G. § 2G1.3, and the applicable Guidelines section for Count 5, is U.S.S.G. § 2G2.2;

c. There is no agreement between the parties regarding the applicable enhancements. The parties agree that the Court will determine the applicable enhancements after receipt of the presentence investigation report prepared by the

United States Probation Office and after the parties have had an opportunity to be heard on the applicable enhancements;

     d.     The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

     e.     There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

     f.     The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

     g.     The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. The agreement by the Government not to seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

     h.     The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant

also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. comment on the evidence supporting the charges in the indictment;

c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d.      oppose any post-conviction motions for reduction of sentence, or other relief.

14.      **<u>Waiver of Constitutional Rights.</u>**      The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a.      the right to plead not guilty and to persist in a plea of not guilty;

b.      the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c.      the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d.      the right to confront and cross-examine the witnesses who testify against him;

e.      the right to compel or subpoena witnesses to appear on his behalf; and

f.      the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that, by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that, if he pleads guilty, the Court may ask him questions about the offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands that he has pleaded guilty to felony offenses and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d. Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information

that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

h. The defendant certifies that he has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without

limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that, in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of

counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys, or any other party to induce him to enter his plea of guilty.

21. **Sex Offender Registration.** The defendant acknowledges that he has been advised, and understands that, by pleading guilty to the instant offense, he will be required under the Sex Offender Registration and Notification Act (SORNA), a federal law, to register as a sex offender and keep the registration current in each of the following jurisdictions: where he resides; where he is employed; and where he is a student. The defendant also acknowledges that he understands that the requirements for registration include providing his name, his residential address, the names and addresses of any places where he is, or will be, an employee or student, or any other relevant information, including international travel. The defendant further acknowledges that he understands that the requirement to keep the registration current includes registering in the jurisdiction in which he resides, is an employee, or is a student, and must be done within 72 hours of any such change in status. The defendant also agrees that he will provide his Probation Officer proof of registration within 72 hours of release from imprisonment, and abide by all state and federal sex offender registration laws, as well as abiding by all of his Probation Officer's directives.

The defendant acknowledges that he has been advised, and understands, that failure to comply with these obligations could subject him to either state or federal prosecution for failure to register, pursuant to Title 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

22.  **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

23.  **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Jeffrey P. Ray**
Acting United States Attorney

By

Dated: 3·6·2025

**Stephanie L. Wan**
Assistant United States Attorney
Missouri Bar No. 58918

*[Signatures on the following page.]*

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 3/6/25

Jeshua Hayes
Defendant

I am defendant Jeshua Hayes's attorney. I have fully explained to him his rights with respect to the offenses charged in the indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Jeshua Hayes's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 3/6/25

Paul Duchscherer
Attorney for Defendant